JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ERICK DE'SART and PLAINTIFF DOES 1-20,

    Plaintiffs,

v.

PACIFIC GAS AND ELECTRIC COMPANY, INC., A California Corporation, and DOES 1-50,

    Defendants.

Case No. 2:18-cv-03515-JFW-MRW

**STATEMENT OF DECISION**

Pacific Gas and Electric Company, Inc. ("Defendant") moves to dismiss Plaintiff Erick De'Sart's ("Plaintiff") First Amended Complaint on the grounds that the first through ninth causes of action are preempted by Section 301 of the Labor Management Relations Act ("LMRA"). After considering Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"), Plaintiff's Opposition, Defendant's Reply, and the arguments of the parties, the Court rules as follows:

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

On November 2, 2016, Plaintiff[1] was working in his position as a "Zebra" security officer at Defendant's Diablo Canyon Nuclear Power Plant under the following post order: "*CONTINUOUS OBSERVATION *NON-READING POST *CONTACT SUPERVISOR IF YOU HAVE QUESTIONS"[2] and engaged in conduct that violated the post order. On November 3, 2016, in the presence of a Shop Steward, who was a fellow security officer, Plaintiff admitted to one of Defendant's investigators that he had read and understood the post order, but had pulled his hat down (to block the sun) and looked down at his personal cell phone to watch several YouTube videos. As a result of his admitted violation of the post order, Plaintiff was terminated for violating 10 C.F.R. Section 50.5 (Deliberate Misconduct).

On January 20, 2017, Plaintiff's union, the SEIU, filed a "Wrongful Termination" grievance on Plaintiff's behalf. On March 8, 2017, Plaintiff attended an investigatory

---

[1] Plaintiff was employed by Defendant from 2011 to 2017 (FAC, ¶¶10 and 15), and was represented by the Service Employees International Union—United Service Workers West, Local 24/7 ("Union") and subject to a collective bargaining agreement ("CBA") between PG&E and the Union. (Dkt. 4, ¶ 2, Exhibit 1). The Court will consider the CBA in ruling on Defendants' Motion. *See Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1193 (C.D. Cal. 2015) ("Because the 2015 CBA forms the basis for [Defendant's] argument that ... plaintiffs' claims are completely preempted by the LMRA, the court can consider it.")

[2] The post was a "continuous observation" post because Defendant's video capture system was down, and, thus, the posted security officer's eyes were the only means for Defendant to know if anyone was approaching. The federal Nuclear Regulatory Commission ("NRC") requires all nuclear licensees, such as Defendant, to continuously monitor nuclear power plants.

meeting with the Union and Defendant to discuss the "Wrongful Termination" grievance and the circumstances of his termination.[3] However, on May 10, 2017, the Union agreed to dismiss the grievance based on the evidence supporting Plaintiff's termination. (Dkt. 4-2). The May 10, 2017 Grievance Settlement was a "final and binding" resolution (*see* CBA, Section 9.4, pp. 16-18) of the "Wrongful Termination" grievance filed by Plaintiff through his Union, and was executed by both Defendant and the Union.[4]

On March 14, 2018, the California Unemployment Insurance Appeals Board ("CUIAB") conducted a hearing regarding Plaintiff's appeal of the initial denial of his unemployment claim. After the hearing, the CUIAB upheld the denial and concluded that:

> In the present case, the claimant, a security officer at a commercial nuclear power plant, failed to perform his job. He was given a specific assignment in an area where the security cameras were down. The assignment was to maintain continuous observation of the area. The claimant did not do so. This is not a situation where the claimant looked down for a moment or attempted to simply change what was on his cell phone. He spent several minutes looking at his phone and did not observe the watch commander who had walked toward him from a distance of at least 75 feet before he contacted the claimant. The claimant, as a security officer, is considered to be the first line of defense in the maintenance of

---

[3] This investigatory meeting, which included argument by the Union on Plaintiff's behalf as well as testimony by Plaintiff himself, is Step Two of the contractual grievance and arbitration process.

[4] Because interpretation of the Grievance Settlement involves interpretation of the CBA, any claims regarding the Grievance Settlement would also be preempted pursuant to Section 301 of the LMRA. *See Beals v. Kiewit Pac. Co.*, 114 F.3d 892, 894 (9th Cir. 1997); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997-98 (9th Cir. 1987); *Inlandboatmens Union of the Pacific v. Dutra Group dba Dutra Construction Co. Inc.*, 279 F.3d 1075, 1079 (9th Cir. 2002); *Unite Here Local 1 v. Host Int'l, Inc.*, 2015 WL 4751196 at *4-5 (N.D. Ill. Aug. 11, 2015).

security at the power plant. His actions were deliberate and in violation of the oral and written instructions he had just received. His actions also had the potential of affecting the license the employer has with the NRC. This being the case, misconduct within the meaning of section 1256 of the Unemployment Insurance Code has been established.

### B. Procedural History

On February 20, 2018, Plaintiff filed his Complaint in San Luis Obispo Superior Court, alleging various contract, statutory, and tort causes of action. On April 26, 2018, Defendant removed the action to this Court. (Dkt. No. 1).

On May 18, 2018, pursuant to a Stipulation of the parties, the Court granted Plaintiff leave to file a First Amended Complaint. (Dkt. 22). On May 25, 2018, Plaintiff filed his First Amended Complaint, alleging causes of action for: (1) breach of the covenant of good faith and fair dealing; (2) breach of contract (implied); (3) termination in violation of public policy; (4) failure to take reasonable steps to prevent discrimination; (5) defamation per se; (6) defamation per quod; (7) preventing future employment by misrepresentation; (8) hostile work environment; and (9) intentional infliction of emotional distress. (Dkt. 25 ["FAC"]).

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). Courts will grant a motion to dismiss when there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Id.* at 1242. Federal Rule of Civil Procedure 12(b)(1) provides dismissal for lack of subject matter jurisdiction. Courts evaluate a motion under Rule 12(b)(1) "as it would a motion to dismiss under Rule 12(b)(6)[.]" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

In evaluating Defendant's motion, the Court disregards conclusory legal and factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, mere

recitation of the elements of a cause of action is insufficient to state a claim. *Id.* at 678. To avoid dismissal, the well-plead factual allegations must "plausibly give rise to an entitlement to relief." *Id.* at 678–79.

## III. DISCUSSION

In its Motion, Defendant argues that all of the claims alleged in Plaintiff's First Amended Complaint require interpretation of the CBA, and, thus, all of the claims are preempted by Section 301 of the LMRA.[5] Plaintiff argues that his claims are not preempted by Section 301 of the LMRA because his claims are based on state law.

### A. Preemption Under Section 301 Of The LMRA

Section 301 of the LMRA grants federal courts jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization[.]" 29 U.S.C. § 185(a). Section 301 "has been construed [ ] broadly to cover most state-law actions that require interpretation of labor agreements." *Builders & Contractors v. Local 302*, 109 F.3d 1353, 1356 (9th Cir. 1997). Where resolution requires interpretation of a CBA, Section 301 preemption applies and the claims at issue must be dismissed. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

LMRA Section 301 does not automatically apply to all state law claims by unionized employees. Instead, the preemption analysis depends on a case-by-case evaluation of a plaintiff's pleaded claims and the specific CBA at issue. For example, in *Audette v. International Longshoremen's and Warehousemen's Union*, 195 F.3d 1107 (9th Cir. 1999), the Ninth Circuit upheld the district court's conclusion that Section 301 preemption applied because "[t]he instant case does not involve a free-standing claim of discrimination." 195 F.3d at 1113 *Audette* involved a plaintiff who,

---

[5] Defendant also argues in the alternative that several of Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim and that Plaintiff's fourth cause of action should be dismissed on the basis of nuclear safety preemption. Although the Court finds Defendant's arguments on these grounds persuasive, both bases are moot in light of the Court's ruling under Section 301 of the LMRA.

like Plaintiff: (i) pleaded state law retaliatory discharge claims and (ii) expressly challenged the employer's actions under a collective bargaining agreement. *Id*. at 1110-11.

In *Madison v. Motion Picture Set Painters & Sign Writers Local 729*, 132 F. Supp. 2d 1244 (C.D. Cal. 2000), the court held that a plaintiff's statutory discrimination claims under the FEHA were preempted by Section 301, because the framework required to establish a prima facie case of discrimination necessarily required "resort to the CBA" to evaluate whether the defendant's articulated non-discriminatory reason for termination was legitimate or pretext. 132 F. Supp. 2d at 1253-55. *Madison* followed *Audette* and held that Section 301 preemption applied because the state law discrimination claim at issue was not independent of the collective bargaining agreement.[6] *Id*. at 1254-55.

In *Bachilla v. Pac. Bell Tel. Co.*, 2007 WL 2765689 (E.D. Cal. Sept. 25, 2007), the court followed both *Audette* and *Madison* and held that the plaintiff's FEHA discrimination claim was preempted by Section 301, reasoning that "because the factual inquiry as to whether [employer] had a non-discriminatory reason for failing to promote [the ] [p]laintiffs turns on the meaning of the provisions of the CBA, [p]laintiffs' state law claim is not independent of the CBA." 2007 WL 2765689 at *25-26.

In *Moreau v. San Diego Transit Corp.*, 210 Cal. App. 3d 614 (1989), the court held that Plaintiff's common law wrongful termination claim was preempted under Section 301 because "even on its most general level it is apparent this case cannot be decided without resort to interpretation of the terms of the collective bargaining agreement." 210 Cal. App. 3d at 624-25.

---

[6] In *Madison*, 132 F. Supp. 2d at 1254, the court also relied on *Reece v. Houston Lighting & Power Co.*, 79 F.3d 485, 487 (5th Cir.), *cert. denied*, 519 U.S. 864 (1996) (holding a discrimination claim preempted by Section 301 because "[employer] will undoubtedly rely on the CBA as its legitimate, non-discriminatory reason for [plaintiff's] treatment. When [plaintiff] then attempts to show that [employer's] stated reason is pretextual, the CBA would have to be interpreted because [plaintiff] would have to challenge [employer's] rights under the CBA.")

Finally, in *Kroeger v. L3 Techs., Inc.*, 2018 WL 1357363 (C.D. Cal. Mar. 15, 2018)[7], this Court relied upon *Audette* (and other cases) and held that various state law statutory discrimination and retaliation claims and a claim for intentional infliction of emotional distress were preempted by Section 301, stating, in relevant part: "Plaintiff explicitly predicates his claims ... on a number of alleged violations of the CBA ... This alone is sufficient for preemption ... Additionally, Plaintiff's claims largely turn on alleged adverse actions and legal violations, the propriety of which the CBAs govern and that are (or have been) the subject of multiple contractual grievances by Plaintiff." 2018 WL 1357363 at *4.

### B. The LMRA Preempts All Plaintiff's Causes of Action in the First Amended Complaint

Plaintiff specifically bases his first cause of action for breach of the covenant of good faith and fair dealing and second cause of action for breach of implied covenant on violations of the CBA and/or violations of a just cause termination standard that exists because of the CBA. (*See* FAC ¶¶ 59 and 64-65.) For example, Plaintiff alleges that "Defendant's failure to promote, and ultimately its decision to terminate, Plaintiff, a qualified worker, was wrongful, in bad faith, arbitrary, and unfair, and done to frustrate his enjoyment of the contract's actual benefits, when Defendant knew there was no just cause." (FAC ¶ 59.) However, the only "contract" between Plaintiff and Defendant was the CBA. Accordingly, these causes of action are preempted. *Allis–Chalmers Corp.*, 471 U.S. at 218 ("[T]he right asserted ...derives from the [CBA]" and "is defined by [ ] contractual obligation ... any attempt to assess liability ... will involve [ ] interpretation); *Kroeger, supra*, 2018 WL 1357363 at *4; *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1474 (9th Cir. 1984).

Plaintiff's third cause of action for termination in violation of public policy, fourth cause of action for failure to take reasonable steps to prevent discrimination, fifth

---

[7] Although Defendant discussed each of these cases – *Audette*, *Madison*, *Bachilla*, *Kroeger*, and *Moreau* – in detail in its Motion and Reply, Plaintiff failed to discuss or distinguish any of them.

cause of action for defamation per se, sixth cause of action for defamation per quod, seventh cause of action for preventing future employment by misrepresentation, and eighth cause of action for hostile work environment are each based on alleged adverse actions and legal violations, the propriety of which are governed by the CBA and which were the subject of the "Wrongful Termination" grievance filed by Plaintiff, through his Union.[8]

To determine if these alleged adverse actions were based on legitimate non-discriminatory/non-retaliatory factors or otherwise violated the law, the Court must "determine whether [the company] was acting consistently with its duties under the CBA ... by interpreting [its] provisions." *Perugini v. Safeway Stores, Inc.*, 935 F.2d 1083, 1088 (9th Cir. 1991); *see also Hyles v. Mensing*, 849 F.2d 1213, 1216 (9th Cir. 1988) (claims preempted where court must "interpret the CBA to determine the scope of [defendant's] authority" exercised under the agreement); *Scott v. Machinists Auto. Trades Dist. Lodge No. 190 of N. California*, 827 F.2d 589, 594 (9th Cir. 1987); *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1063 (9th Cir. 1989); *Kirton v. Summit Med. Ctr.*, 982 F. Supp. 1381, 1389 (N.D. Cal. 1997).

Accordingly, the LMRA preempts Plaintiff's defamation, discrimination, and retaliation based claims. *See Audette, supra,* 195 F.3d at 1113 (9th Cir. 1999) (holding that sex discrimination/harassment claims preempted by § 301); *Silva v. USF Reddaway, Inc.*, 2017 WL 2117397, *4–5 (N.D. Cal. May 15, 2017) (holding that FEHA disability claims preempted by LMRA).

Similarly, the LMRA preempts Plaintiff's ninth cause of ninth cause of action for intentional infliction of emotional distress. *See Cook v. Lindsay Olive Growers*, 911

---

[8] The allegedly adverse actions include, but are not limited to: (a) failing to promote Plaintiff to Nuclear Security Officer (NSO), (b) disciplining Plaintiff, a Zebra officer, differently from NSOs, (c) using age, rather than the contractual criteria, for determining NSO placement, (d) maintaining the Zebra classification of officers, in accordance with the CBA, and (e) making damaging statements, previously made in the May 10, 2017, grievance settlement, about Plaintiff to third parties. (*See* FAC ¶¶ 85, 40, 44, 11-12, 91, 93, 95 and 105.)

F.2d 233, 239–40 (9th Cir. 1990); *Wise v. Solar Turbines, Inc.*, 2014 WL 2573324, *3 (S.D. Cal. June 9, 2014) ("A plaintiff faces an 'uphill battle' when he attempts to avoid Section 301 preemption of an IIED claim."). Determining whether conduct is sufficiently extreme for an intentional infliction of emotional distress claim "is not an independent, nonnegotiable standard of behavior. ... [I]t depends upon the relationship between [the parties] such that the terms of the CBA are relevant in evaluating the reasonableness or outrageousness of defendants' conduct." *Ortiz v. Permanente Med. Group, Inc.*, 2013 WL 1748049, *7 (N.D. Cal. Apr. 23, 2013). Thus, Plaintiff's intentional infliction of emotional distress claim is preempted as it requires analysis and interpretation of multiple provisions of the CBA.

Because Plaintiff's first, second, third, fourth, fifth, sixth, seventh, eighth, and ninth causes of action are preempted by the LMRA, they are dismissed.

### C. Plaintiff Failed to Bring a Hybrid Section 301 Claim Within Six Months of the Grievance Procedure Under the CBA, and, Thus, His Preempted Claims Are Dismissed Without Leave to Amend.

"Subject to very limited judicial review, [the employee] will be bound by the result according to the finality provisions of the [CBA grievance procedure]." *DelCostello v. Int'l Brotherhood Of Teamsters*, 462 U.S. 151, 164 (1983). A plaintiff may avoid the finality of the contractual grievance procedure only "when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *Id.* at 163. To recover directly against the employer, "[t]he employee must prove *both* the employer's breach of the agreement and the union's breach of duty, even if the employee brings suit against only one defendant." *Eason v. Waste Management of Alameda County*, 2007 WL 2255231, at *5 (N.D. Cal. Aug. 3, 2007)(emphasis in original) (citing *DelCostello*, 462 U.S. at 165); *accord Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 988-89 (9th Cir. 2007) (collecting cases in support of proposition that employee must allege breach of duty of fair representation by union to maintain action governed by Section 301 against employer). A plaintiff must bring

a hybrid Section 301 action -- alleging that the employer breached the CBA and that the union breached its duty of fair representation -- within six months of the conclusion of the contractual grievance process. *DelCostello*, 462 U.S. at 169-70; *Soremekun*, 509 F.3d at 989, n.39; *Eason*, 2007 WL 2255231, at *5.

In this case, the contractual grievance process was concluded on May 10, 2017, and this action was not filed until February 20, 2018, which was well past the six month deadline for Plaintiff to bring a hybrid Section 301 claim. In addition, at no point during this action has Plaintiff alleged the Union breached its duty of fair representation in agreeing with Defendant to the Grievance Settlement. Therefore, although the Court generally grants leave to amend a complaint, it need not do so where, as in this case, an amendment would be futile. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

## IV. CONCLUSION

Defendant's Motion is **GRANTED**. Plaintiff's First Amended Complaint is **DISMISSED without leave to amend**, and this action is **DISMISSED with prejudice**.

Dated: July 18, 2018

_____
HONORABLE JOHN F. WALTER
UNITED STATES DISTRICT JUDGE